IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:12-CV-00049-FL

| | |
|---|---|
| TUAN H. NGUYEN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) ORDER |
| | ) |
| AUSTIN QUALITY FOODS, INC.; | ) |
| KEEBLER COMPANY, INC.; and | ) |
| KELLOGG COMPANY, | ) |
| | ) |
| Defendants. | ) |

This matter comes before the court on defendants' motion for summary judgment (DE 21). Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b), United States Magistrate Judge Robert B. Jones, Jr. entered a memorandum and recommendation ("M&R") wherein it is recommended that the court grant defendants' motion. Plaintiff filed objections to the M&R, to which defendants responded. In this posture, the issues raised are ripe for ruling. For the reasons that follow, the court grants defendants' motion for summary judgment.

**STATEMENT OF THE CASE**

On January 5, 2012, plaintiff filed complaint in the Wake County Superior Court alleging defendants terminated his employment in violation of the North Carolina Retaliatory Employment Discrimination Act ("REDA"), N.C. Gen. Stat. § 95-240, *et seq.*, and North Carolina public policy. Plaintiff also alleges he was discriminated against on the basis of his disability, race, and national origin, in violation of North Carolina public policy.

Defendants timely removed this action to this court on the basis of diversity of citizenship jurisdiction. On February 16, 2012, defendants filed answer, generally denying the allegations and raising several affirmative defenses, including that plaintiff was terminated for legitimate, non-discriminatory reasons. After a period of discovery, on January 31, 2013, defendants filed the instant motion for summary judgment wherein they seek dismissal of all of plaintiff's claims. Defendants rely on depositions, sworn declarations, and business records, including an employee handbook, in support of the motion for summary judgment.

Plaintiff defends against the instant motion with reliance on depositions, sworn affidavits, and defendants' business records, including employment records of plaintiff, letters written by defendants' human resource manager and in-house counsel, and notice of termination of compensation by reason of trial return to work form as filed with the North Carolina Industrial Commission.

**UNDISPUTED FACTS**

The following is undisputed. Plaintiff began working as a temporary employee at defendants' manufacturing plant in Cary, North Carolina (the "plant") in 2006, and he was hired in a permanent capacity in August 2007. During the time frame at issue in this case, plaintiff operated a machine that assembled peanut butter sandwich crackers. Plaintiff routinely placed pieces of cardboard ("slip sheets") under the machine to collect dripping peanut butter to facilitate the cleaning process.

On July 13, 2009, plaintiff suffered a work-related injury when he reached into the machine to straighten or pat down a corner of the slip sheet. Plaintiff's left hand was caught in the machine, resulting in the partial amputation of three fingers.

2

On July 15, 2009, plaintiff filed a workers' compensation claim, and he received benefits until August 16, 2009, when his doctor approved his return to light duty work on a trial basis. On August 17, 2009, plaintiff returned to the plant and had a meeting with the plant's safety manager, human resources manager, and a co-worker, who served as a translator. At that meeting, plaintiff was suspended pending further investigation.

On August 27, 2009, defendants terminated plaintiff's employment. On that date, defendants prepared a separation form, indicating violation of the plant's rules and policies as the reason for termination. Subsequent letters from defendants to plaintiff stated the reason for termination was violation of the plant's rules and policies, specifically lockout/tagout policy.

## DISCUSSION

A.  Standard of Review

Summary judgment is appropriate where an examination of the pleadings, affidavits, and other proper discovery materials before the court demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (holding that a factual dispute is "material" only if it might affect the outcome of the suit and "genuine" only if there is sufficient evidence for a reasonable jury to find for the non-moving party).

The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the non-moving party must then "set forth specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co.

3

Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). In making a determination on a summary judgment motion, the court views the evidence "in the light most favorable to the party opposing the motion", granting that party the benefit of all reasonable inferences. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962); see also Matsushita, 475 U.S. at 588.

The district court reviews *de novo* those portions of a magistrate judge's M&R to which specific objections are filed. 28 U.S.C. § 636(b). The court does not perform a *de novo* review where a party makes only "general and conclusory objections that do not direct the court to a specific error in the magistrate's proposed findings and recommendations." Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982). Absent a specific and timely filed objection, the court reviews only for "clear error," and need not give any explanation for adopting the M&R. Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005); Camby v. Davis, 718 F.2d 198, 200 (4th Cir.1983). Upon careful review of the record, "the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

B.   REDA Claim

REDA prohibits discrimination or retaliation against an employee for, *inter alia*, filing a workers' compensation claim. N.C. GEN. STAT. § 95-241(a)(1). To state a claim under REDA, a plaintiff must show that

> (1) he exercised his right to engage in protected activity, such as filing a workers' compensation claim; (2) he suffered an adverse employment action; and (3) a causal connection exists between the exercise of the protected activity and the alleged retaliatory action. If the plaintiff has established a *prima facie* case of retaliatory termination, the burden shifts to the defendant to show that it would have taken the same unfavorable action in the absence of the protected activity of the employee.

Edwards v. PCS Phosphate Co., Inc., 812 F. Supp. 2d 689, 693 (E.D.N.C. 2011) (citations omitted). Once defendant meets its burden, plaintiff must demonstrate that the proffered non-discriminatory

4

reason was actually pretext for discrimination. Lilly v. Mastec N. Am., Inc., 302 F. Supp. 2d 471, 481 (M.D.N.C. 2004).[1]

Plaintiff alleges he was terminated for filing a workers' compensation claim. There is no dispute that plaintiff has satisfied the first two elements of a REDA claim. However, defendants contend plaintiff has failed to establish the third element of a prima facie case, a causal connection between the filing of his claim and his termination. The causal connection element can be satisfied by a showing of close temporal proximity between the exercise of the protected activity and the alleged retaliatory employment action, or a pattern of conduct. Smith v. Computer Task Group, Inc., 568 F. Supp. 2d 603, 614 (M.D.N.C. 2008) (citations omitted). In addition, a plaintiff may present "direct and circumstantial evidence of causation or non-causation." Edwards, 812 F. Supp. 2d at 695; see Lilly, 302 F. Supp. 2d at 483-84.

Plaintiff makes three objections to the M&R. First, plaintiff argues the magistrate judge erred in finding no close temporal proximity between the exercise of the protected activity and the adverse employment action. Second, plaintiff argues the magistrate judge erred in finding there was no pattern of retaliatory conduct for purposes of the prima facie case. Third, plaintiff argues the magistrate judge erred in finding defendants' proffered legitimate, non-discriminatory reason for the adverse employment action was not pretextual.

  1. Close Temporal Proximity

"Courts have established the general parameters of temporal proximity for purposes of REDA on a case-by-case basis. At one extreme, courts have found a time period of approximately

---

[1] See Abels v. Renfro Corp., 335 N.C. 209, 218, 436 S.E.2d 822, 827 (1993) (in addressing REDA claims, the court may "look to federal decisions for guidance in establishing evidentiary standards and principles of law to be applied in discrimination cases").

5

one month or less to constitute close temporal proximity." Smith, 568 F. Supp. 2d at 614 (citations omitted). Under these circumstances, close temporal proximity may be sufficient alone to establish the requisite "causal connection element of the prima facie case under REDA". Id. at 614 n. 12 (citations omitted). "At the other extreme, courts have held a time period of more than two and one-half months to constitute the absence of close temporal proximity." Id. at 614 (citations omitted). When the time period between the protected activity and adverse employment action is greater than two and one-half months, courts have considered temporal proximity in addition to direct and circumstantial evidence of causation. See Edwards, 812 F. Supp. 2d at 695. "A grey area appears to exist for periods between one month and two and one-half months." Smith, 568 F. Supp. 2d at 615.

Here, plaintiff filed a workers' compensation claim on July 15, 2009, and defendants suspended him on August 17, 2009, thirty-three (33) days after the claim was filed. Therefore, the temporal proximity between the protected activity and the adverse employment action falls into the grey area of more than one month, but less than two and one-half months. This court has identified only one prior case that has dealt with a REDA claim in this grey area. See Smith, 568 F. Supp. 2d at 615. The court in Smith was unwilling to

> say that this seventy-day period [between filing a workers' compensation claim and termination] is insufficient as a matter of law, nor is it short enough alone to constitute a prima facie case. To be sure, the court is aware of no case that holds that such a time period fails to show close temporal proximity for a REDA claim as a matter of law.

568 F. Supp. 2d at 615. The court in Smith assumed plaintiff could make out his prima facie case because "the court conclude[d] that [defendant] has demonstrated its affirmative defense as a matter

6

of law." Id.[2]

In the context of federal discrimination cases, which informs the court's analysis here, temporal proximity is not "sufficient evidence of causality to establish a prima facie case . . . [unless] the temporal proximity [is] very close." Clark Cnty. Sch. Dist. v. Breeden, 532 U.S. 268, 273 (2001) (per curiam) (quotations omitted).[3] In light of this precedent, this court is unwilling to find thirty-three days is insufficient as a matter of law to satisfy the causal connection element of the prima facie case of a REDA claim. Accordingly, the court will presume without deciding that plaintiff can establish the causality element of the prima facie case of a REDA claim.[4]

---

[2] Another case, Roberson v. Paul Smith, Inc., Nos. 5:07-CV-284-F, 5:08-CV-40-F, 2011 WL 683900, *8, 2011 U.S. Dist. LEXIS 16553, at *8 (E.D.N.C. Feb. 18, 2011), dealt with a REDA claim in the grey area. The court found the thirty-three days between the employee's work-related injury and termination was "approximately a month" and sufficient evidence as a matter of law of causal connection. The employee received notification of her termination thirty days after the work-related injury, but the termination was not effective until thirty-three days after the injury. However, the REDA claim was later remanded because it involved a novel issue of state law regarding whether statutory language in N.C. Gen. Stat. § 95-241(a) precluded mixed motive cases under REDA. Roberson v. Paul Smith, Inc., 2011 U.S. Dist. LEXIS 42978, at *10-11 (E.D.N.C. Apr. 20, 2011). The portion of the prior order concerning the REDA claim was vacated.

[3] Clark County did not establish a boundary of what constitutes "very close," but it did cite as examples of insufficient temporal proximity two cases where the employer took the adverse action three and four months, respectively, after the protected activity. See id. at 273-74. Later the Fourth Circuit determined a ten week gap between protected activity and termination significantly weakened the inference of causation, but it did not undercut that inference enough to render plaintiff's prima facie case unsuccessful where the termination occurred at a natural decision point. King v. Rumsfeld, 328 F.3d 145, 151 n. 5 (4th Cir. 2003).

[4] Because this court has presumed without deciding that plaintiff can establish the causal connection element of the prima facie case of a REDA claim, the court need not address plaintiff's objections to the pattern of conduct section of the M&R pertaining to plaintiff's prima facie case. To the extent plaintiff raises pattern of conduct in support of pretext, the court addresses such evidence in the discussion of pretext below.

7

2. Pretext

Even if plaintiff can establish a prima facie case under REDA, defendants may avoid liability by showing, by a preponderance of the evidence, that it "would have taken the same unfavorable action in the absence of the protected activity of the employee." N.C. GEN. STAT. § 95-241(b). To rebut defendants' proffer of a non-discriminatory reason for the adverse employment action, plaintiff must produce evidence that "go[es] beyond that which was necessary to make a prima facie showing by pointing out specific, non-speculative facts which discredit the defendant's non-retaliatory motive." Webb v. K.R. Drenth Trucking, Inc., 780 F. Supp. 2d 409, 414 (W.D.N.C. 2011) (citation omitted). To find a genuine dispute of material fact exists regarding whether the apparently legitimate, nondiscriminatory reason was actually a pretext for retaliation, "[i]t is not enough ... to *disbelieve* the employer; the factfinder must *believe* the plaintiff's explanation of intentional discrimination." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 147 (2000) (quotation omitted); see King v. Rumsfeld, 328 F.3d 145, 150-51 (4th Cir. 2003); Price v. Thompson, 380 F.3d 209, 212 ( 4th Cir. 2004)

Here, defendants contend plaintiff's employment was terminated because plaintiff violated defendants' lockout/tagout policy by reaching his hand into a moving machine, constituting a violation of a published Group I work rule, which stated that "carelessness or recklessness resulting in a serious accident to an Associate" will result in immediate discharge. See Corrective Action Interview (DE 29-1). Plaintiff contends this proffered reason is pretext, as evidenced by testimony from other employees, including plaintiff's former supervisor, that plaintiff did not violate lockout/tagout policy. Plaintiff also relies on the fact that other employees not engaged in protected

activities were not disciplined for violating lockout/tagout and that defendants' challenged his workers' compensation claim.

Plaintiff's contentions are not supported by the evidence in the record. Other plant employees consistently indicated the slip sheet practice is not a violation of lockout/tagout policy, but they all agreed that reaching one's hand into a moving machine is a violation of company policy. Williams Decl. ¶¶ 7, 9; Judd Dep. 38:6-23; Bloomfield Dep. 29:14-18; Britton Dep. 12:12-20; Nay Dep. 12:1-14. According to plaintiff's supervisor, the slip sheet procedure is not a violation of lockout/tagout, but this procedure can be done without placing one's hands into the machine. Williams Decl. ¶ 7. Based on his knowledge of the construction and operation of the relevant machine, the supervisor indicates the only way plaintiff could have been injured is if his hand was inside the moving machine. Id. at ¶ 9. Plaintiff acknowledges he put his hand into the moving machine and that this action was "abnormal or dysfunctional." Nguyen Dep. 92:20-21. Plaintiff's argument that defendants changed the justification for his termination to include a violation of a company rule only after the institution of his lawsuit is unfounded. Defendants' Separation Form, dated as of the date of plaintiff's termination (August 27, 2009), indicates the reason for his termination is a violation of company "rule/policy." Defs. Separation Form (25-2). The parties differ over whether lockout/tagout, two points of control, or the work rules, or any combination of the three safety protocols were violated. But, the important, undisputed fact is plaintiff inserted his hand into a moving machine. Any of the safety protocols would prohibit such action, and even plaintiff knew he should not insert his hand into a running machine.

Next, plaintiff contends defendants' stated reason for the termination is pretext for retaliation because other employees, who were not engaged in protected activity, routinely performed the same

9

actions and were not disciplined for violating lockout/tagout policy. The Supreme Court of North Carolina has acknowledged the longstanding practice of federal courts allowing the use of "comparative evidence in employment discrimination cases." Abel, 335 N.C. at 218. Defendants produced comparative evidence of other employees who filed workers' compensation claims and were not terminated and other employees who were not injured and did not file a workers' compensation claim that were terminated for violating plant rules. Moses Decl. ¶¶ 6, 8. Even though the record lacks specific information about these other incidents, the record supports defendants' position that the termination decision was made because of a legitimate reason, plaintiff's violation of a work rule. Plaintiff has not produced any evidence to rebut defendants' stated non-retaliatory reason for his termination, other than his own speculation.

Finally, plaintiff contends defendants' challenge of plaintiff's workers' compensation claim demonstrates retaliatory motive for his termination. This evidence is insufficient to establish a genuine dispute of material fact with respect to pretext. Defendants did not file a statement with the North Carolina Industrial Commission to terminate his workers' compensation benefits until after his doctor cleared him for a trial return to work and he was suspended because of the ongoing investigation into the potential safety violation. Elliott Dep. 63:18-64:2.

Plaintiff has not produced credible evidence from which a reasonable factfinder could find the asserted reason for his termination was pretext and that the real reason for his termination was retaliation for filing a worker's compensation claim. Therefore, there is no genuine dispute of any material fact, and defendants are entitled to judgment as a matter of law.

B.  Other Claims

Plaintiff also alleges he was wrongfully discharged for filing a workers' compensation claim in violation of North Carolina's public policy. He also alleges he was wrongfully terminated because of his disability, race and national origin, in violation of North Carolina public policy. Plaintiff did not object to the magistrate judge's determination of these claims.

In this case, the M&R correctly determined plaintiff's claim for wrongful discharge for filing a workers' compensation claim was without merit where plaintiff failed to establish a genuine dispute of material fact concerning pretext. Upon careful review of the M&R and the record, the court determines there is no genuine dispute as to any material fact and defendants are entitled to judgment as a matter of law with respect to this claim.

The magistrate judge correctly determined plaintiff's wrongful discharge because of disability claim was without merit where plaintiff failed to establish a prima facie case. Specifically, plaintiff failed to produce evidence to suggest the termination occurred under circumstances giving rise to a reasonable inference of unlawful discrimination. In addition, plaintiff failed to produce evidence that defendants' legitimate, non-discriminatory reason for termination is pretext. Upon careful review of the M&R and the record, the court determines there is no genuine dispute as to any material fact and defendants are entitled to judgment as a matter of law with respect to this claim.

Finally, the M&R correctly determined plaintiff's wrongful discharge because of race and national origin claim was without merit where plaintiff failed to establish a prima facie case. Plaintiff did not present evidence that defendants hired a similarly qualified applicant outside plaintiff's protected class to fill the vacancy created by his termination. Upon careful review of the

11

M&R and the record, the court determines there is no genuine dispute as to any material fact and defendants are entitled to judgment as a matter of law with respect to this claim.

CONCLUSION

After careful review of the record in this case, for the reasons stated, defendants' motion for summary judgment (DE 21) is GRANTED. The clerk is directed to CLOSE this case.

SO ORDERED, this the 24th day of September, 2013.

_____
LOUISE W. FLANAGAN
United States District Judge